ACCEPTED
15-25-00201-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/8/2026 1:32 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00201-CV

COURT OF APPEALS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/8/2026 1:32:01 PM
CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **WCH MASTER COMMUNITY, INC.** | § | AUSTIN, TEXAS |
| *Appellant,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THOMAS WOLF AND EILEEN WOLF,** | § | |
| *Appellees.* | § | **FIFTEENTH DISTRICT** |

## APPELLEES BRIEF

Thomas Wolf and Eileen Wolf (the "Appellees") in the above-referenced matter file this Appellees Brief and would respectfully show the Court as follows:

### INTRODUCTION

After repeated vehicle break-ins with cars being stolen from the West Cypress Hills (WCH) neighborhood, on May 9, 2024, the Appellees installed pole-mounted cameras in their front yard as a security measure with a view of the street. The WCH Community Management company issued a notification of "non-compliance" to the Appellees on May 16th, stating: ***Architectural control approval is required for any modification or alteration.*** The pole and cameras were installed by the Appellees without submitting any request for Architectural Control Committee (ACC) review or approval, because they are security measures as outlined in Texas Property Code, Title 11, Charter 202, Section 202.023 SECURITY MEASURES (TPC202.023), with the homeowners' rights created therein *see* **Exhibit A**. Despite the Appellees' belief that the Architectural request was a gross over-reach of HOA authority, they complied with the notice by submitting the required documentation on or about June 3rd. The following ACC response was issued June 11th:

***We regret to inform you that the West Cypress Hills HOA Architectural Committee has declined your application for the listed item(s) with the following reason(s):***

***The ACC is denying the use <u>of pole mounted cameras and the associated equipment.</u> The cameras***

***may be mounted on the house, but will not be approved as pole mounted anywhere on the lot.***

The pole serves no other purpose than to place cameras in a location for appropriate views of the street, at an optimal height for recording cars and people approaching the property, while remaining out of reach for potential threats and vandals. The HOA Board, ACC, and Appellant's Counsel refuse to recognize the authority of TPC202.023, and have been harassing the Appellees ever since, as demonstrated by the Appellant's case.

## APPELLEES EVIDENCE

To support the facts in this Case, Appellees attach the following evidence and incorporate the evidence into this Brief by reference:

**Exhibit A:** Texas Property Code, Title 11, Charter 202, Section 202.023 SECURITY MEASURES

**Exhibit B:** Senate Committee on Business & Commerce, Bill Analysis, SRC-JJB C.S.H.B. 3571 87(R)

**Exhibit C:** 2024-11-05 Corr to Wolf re Resp to Letter – 001737-000001

**Exhibit D:** Notification - License Plate Readers: FAQs, *Why wasn't there a neighborhood vote on this?*

**Exhibit E:** Minimizing Damages to the Community Residents

## SUPPORT FOR THE SUMMARY JUDGMENT STANDARD

A party may move for a no-evidence summary judgment "after adequate time for discovery." TX. R. CIV. P. 166a(i). Appellants filed their lawsuit on January 27, 2025. After almost seven months, Appellants have had more than adequate time for discovery.

The standard for determining whether a movant for a traditional motion for summary judgment has met its burden is whether the movant has shown that there is no genuine issue of material fact and judgment should be granted as a matter of law. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215–16 (Tex. 2003.) The courts of Texas have determined that a "no-evidence" motion for summary judgment is essentially a pre-trial directed verdict and have applied the same legal sufficiency

standard in reviewing such "no-evidence" summary judgments as applied in directed verdict circumstances.  See Malone v. E.I. Du Pont De Nemours & Co., 8 S.W.3d 710, 714 (Tex. App.—Fort Worth, 1999, pet. denied); Frazier v. Yu, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied); Moore v. K-Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1989, pet. denied).

Unlike a traditional summary judgment, a no-evidence summary judgment movant does not bear the burden of establishing a right to judgment by proving each claim or defense. See Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Instead, a party seeking a no-evidence summary judgment must merely assert that no evidence exists as to one or more essential elements of claims upon which the non-movant would have the burden of proof at trial. See McCombs v. Children's Med. Ctr., 1 S.W.3d 256, 258 (Tex. App.—Texarkana 1999, no pet.). A movant who conclusively negates a single essential element of a cause of action is entitled to summary judgment on that claim. See KCM Fin. LLC v. Bradshaw, 457 S.W.3d 70, 79 (Tex. 2015); Nall v. Plunkett, 404 S.W.3d 552, 555 (Tex. 2013); Frost Nat'l Bank v. Fernandez, 315 S.W.3d 494, 508 (Tex. 2010.) If the non-movant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact as to an essential element of a claim on which the non-movant has the burden of proof at trial, summary judgment is appropriate. See TX. R. CIV. P. 166a(i); Holmstrom, 26 S.W.3d at 530.

## BURDEN OF PROOF

Appellant's evidence and arguments are predicated on the false premise of the Appellees installing an "improvement" instead of security measures. Their argument completely fails to address TPC202.023 and the homeowners' rights created therein *see* **Exhibit A**. The statute specifically says, *(c), a property owners' association may not adopt or enforce a restrictive covenant that prevents a property owner from building or installing security measures, including but not limited to a security camera, motion detector, or perimeter fence.* Based upon that Statute, there are no enforceable restrictive covenants to limit the Appellees' ability to install pole-mounted security cameras on private

property. No ACC request, review, or approval is required for installation of safety measures. Moreover, the Legislator's original intent for TPC202.023 clearly outlines their desire to ***ensure that Texans are able to adequately protect their homes by <u>prohibiting a property owners' association from preventing a property owner from building or installing security measures</u>*** see **Exhibit B**. The same Legislators also recognized, ***even well-intentioned property owners' associations can lose sight of the rights of the private property owners they exist to represent,*** as demonstrated by the Appellant's case.

<b>HARM, INJURY, OR DAMAGE</b>

Injury and harm in this case appear to be a work of Hollywood fiction. The Appellants claim they were ***required to enforce the restrictive covenants***. The Appellees did not cause harm or injury so egregious to require the HOA Board and ACC to deny the use of a security camera pole on their own property. Property values in the houses nearby did not fall rapidly due to the Security Cameras facing up and down the street. Neighbors were not becoming physically ill due to the design features. There is no justification for the ACC to blatantly deny the Appellees the ability to protect their home with basic security measures they deemed necessary. The Appellees want to peacefully and passively protect their property and family with cameras on a pole in their own front yard. Beginning with the expenses for notification letters issued by the Community Management company, followed by certified letters, escalating fees, fines, and threats from the HOA Board's Counsel, this situation ultimately culminated in a court case. The only measurable harm or injury was inflicted on all neighborhood residents by the HOA Board, stemming from the costs incurred in pursuing a baseless enforcement action against the Appellees and the associated damages inflicted on them.

<b>FILED IN BAD FAITH</b>

Appellant's claims are "Groundless with No Basis in Fact", as defined in Section 9.001.(3)(A)(B) of the Texas Civil Practice and Remedies Code. Appellants filed their lawsuit in Bad Faith, for the

purpose of Harassment of Appellees and the Intentional Inflection of Emotional Distress, pursuant to Section 9.011.(1)(2) of the Texas Civil Practice and Remedies Code.

Appellant's Counsel acknowledges the Appellees's reference to protection of security measures under TPC202.023, but chooses to tell the Appellees that Statute does not apply to poles *see* **Exhibit C.** Appellants as part of the HOA Board, voted unanimously in support of two new pole-mounted cameras for the neighborhood on Oct 4, 2024, more than two months before pursuing legal action against the Appellees in District Court see **Exhibit D**. This frivolous and meritless suit is not only an egregious misuse of the Justice System, but it is also a purposeful waste of this Courts' precious time and resources.

If the Appellants are not clear on the legal definition of security measures, or home owners rights as outlined by TPC202.023, they should take their concerns to the Texas Legislature. It is not a matter for Courts to have to interpret, but for the Legislature to define in the Statue.


**PRAYER**

**WHEREFORE,** in consideration of the fact that this meritless and frivolous suit was filed in bad faith, with the sole intent to harass, the Appellees respectfully request this Honorable Court sanction Appellants, pursuant to Section 9.012.(d) & (e)(1)(2)&(3) of the Texas Civil Practice and Remedies Code, and strike their pleading, dismiss Appellant's case, and order Appellant's to pay Appellees' reasonable expenses, costs, and attorney's fees for having to defend all bad faith actions, and consider reporting to the appropriate grievance committee, as provided by the State Bar of Texas Bar Act Act (Article 320a-1). Moreover, Appellees request the WCH HOA Board and Community Management company expunge all derogatory HOA records, fines, and fees associated with the Appellees and this case, and for such other relief, both general and special, to which Appellees may be justly entitled see **Exhibit E**.

Appellees pray that this Court dismiss this Appeal in judgment against Appellants on all their claims as requested herein, Appellants take nothing and the case be dismissed.

Respectfully submitted,

By: /s/ Thomas Wolf
Thomas Wolf
Appellees
twolf.tx@gmail.com

Thomas and Eileen Wolf
21813 Agarito Ln
Spicewood, Texas 78669
254-258-7647
Appellees

## CERTIFICATE OF SERVICE

By my signature, this is to certify that a copy of the foregoing document was served on Appellants by delivering a true and correct copy through the Court's e-filing system, on this the 8th day of January 2026, as follows:

*Via e-Service: adam.pugh@caglepugh.com*
*marla.jones@caglepugh.com*

**CAGLE PUGH**
Adam Pugh
Texas Bar No. 24044341
Marla Jones
Texas Bar No. 24046174
4301 Westbank Dr., Building A, Suite 150
Austin, Texas 78746
Tel. (737) 261-0600
Fax. (737) 261-0637
adam.pugh@caglepugh.com
marla.jones@caglepugh.com
ATTORNEYS FOR Appellant

By: /s/ Thomas Wolf
Thomas Wolf

# EXHIBIT

# A

The following section was amended by the 89th Legislature. Pending publication of the current statutes, see S.B. 711, 89th Legislature, Regular Session, for amendments affecting the following section.

Sec. 202.023.  SECURITY MEASURES.  (a)  This section does not apply to:
(1)  a condominium as defined by Section 81.002 or 82.003; or
(2)  a master mixed-use property owners' association subject to Chapter 215.
(b)  Except as provided by Subsection (c), a property owners' association may not adopt or enforce a restrictive covenant that prevents a property owner from building or installing security measures, including but not limited to a security camera, motion detector, or perimeter fence.
(c)  This section does not prohibit a property owners' association from:
(1)  prohibiting the installation of a security camera by a property owner in a place other than the property owner's private property; or
(2)  regulating the type of fencing that a property owner may install.

Added by Acts 2021, 87th Leg., R.S., Ch. 716 (H.B. 3571), Sec. 1, eff. June 15, 2021.
Added by Acts 2021, 87th Leg., R.S., Ch. 951 (S.B. 1588), Sec. 4, eff. September 1, 2021.

# EXHIBIT

# B

# BILL ANALYSIS

Senate Research Center                                                        C.S.H.B. 3571
87R26185 MWC-F                                 By: Bonnen (Springer)
Business & Commerce
5/20/2021
Committee Report (Substituted)

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

Property owners' associations are a desirable and sometimes necessary amenity to homeownership. However, even well-intentioned property owners' associations can lose sight of the rights of the private property owners they exist to represent. As technology continues to advance and evolve, more and more homeowners are utilizing security devices, oftentimes to protect areas of their property with a poor line of sight. Unfortunately, there are reports of some property owners' associations preventing property owners from installing security measures such as fences, motion detectors, and security cameras. The bill seeks to ensure that Texans are able to adequately protect their homes by prohibiting a property owners' association from preventing a property owner from building or installing security measures.

(Original Author's/Sponsor's Statement of Intent)

C.S.H.B. 3571 amends current law relating to the regulation of security measures by certain property owners' associations.

## RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS

SECTION 1. Amends Chapter 202, Property Code, by adding Section 202.023, as follows:

> Sec. 202.023. SECURITY MEASURES. (a) Provides that this section does not apply to a master mixed-use property owners' association subject to Chapter 215 (Master Mixed-Use Property Owners' Associations).

> > (b) Prohibits a property owners' association, except as provided by Subsection (c), from adopting or enforcing a restrictive covenant that prevents a property owner from building or installing security measures, including but not limited to a security camera, motion detector, or perimeter fence.

> > (c) Provides that this section does not prohibit a property owners' association from regulating the type of fencing that a property owner is authorized to install.

SECTION 2. Effective date: upon passage or September 1, 2021.

# EXHIBIT

# C



CAGLE PUGH
Attorneys & Counselors

**Adam Pugh**
e-mail: adam.pugh@caglepugh.com

www.caglepugh.com

November 5, 2024

Thomas Wolf
21813 Agarito Lane
Spicewood, Texas 78669

*Via First-Class & CMRRR:*
*9314 8699 0430 0128 1116 06*

Eileen Wolf
21813 Agarito Lane
Spicewood, Texas 78669

*Via First-Class & CMRRR:*
*9314 8699 0430 0128 1116 13*

Thomas Wolf

*Via E-mail: twolf.tx@gmail.com*

RE: 21813 Agarito Lane, Spicewood, Texas 78669 (the "***Property***") – Response to Correspondence regarding Denial of Security Camera on Pole

Dear Thomas Wolf and Eileen Wolf:

As you know, this firm represents West Cypress Hills Homeowners Association, Inc. (the "***Association***") regarding the Board of Directors' (the "***Board***") review of the Architectural Control Committee's (the "***ACC***") denial of the application submitted regarding the Property.

We are in receipt of your correspondence dated October 24, 2024. While the Texas Property Code does allow for installation of security cameras, and while security cameras are allowed within the subdivision, the security camera itself is not what the ACC and Board are denying. The sole issue here is that the installation and placement of a security camera on a pole is a violation of the Association's restrictive covenants. You are allowed to install security cameras that are mounted to your home, as previously stated.

To reiterate, the ACC's Denial and the Board's Denial still stand as the installation of the pole with the security camera on it is the violation; not having the security camera. To cure this violation, the pole with the security camera must be removed within the next ten (10) days. While this violation has accrued $575.00 in fines to date, the Board is willing to waive these fines, in a good faith effort to resolve this matter, if the pole is permanently removed by November 15, 2024. If the pole is not permanently removed by this date, the Board has authorized our firm to move forward with legal action. In such event that legal action is pursued, the Association will seek not only injunctive relief, but also attorney's fees and costs, which could be substantial.

**Austin:** 4301 Westbank Drive, Building A, Suite 150, Austin, TX 78746    (T) 737-261-0600 | (F) 737-261-0637
**Dallas:** 4600 Greenville Ave., Ste. 220, Dallas, TX 75206    (T) 469-676-4020 | (F) 737-261-0637
**Houston:** 2500 Wilcrest, Ste. 300, Houston, TX 77042    (T) 281-404-3520 | (F) 737-261-0637
**San Antonio:** 18756 Stone Oak Parkway, Suite 200, San Antonio, TX 78258    (T) 726-222-9240 | (F) 737-261-0637

Should you have any questions, please do not hesitate to contact our office at (737) 261-0600.

Sincerely,

CAGLE PUGH

Adam Pugh

cc:     West Cypress Hills Homeowners Association, Inc.

# EXHIBIT

# D

## New License Plate Readers in West Cypress Hills

In an effort to deter criminal activity in our community, the HOA has installed new license plate reader cameras at the entrance to the neighborhood on HOA-controlled land. The hardware for these systems was generously donated by a community resident. This system captures the rear license plates of incoming and outgoing vehicles in our community.

To address privacy concerns, we emphasize the following:

- **Limited Purpose**: The data collected from these cameras is owned by the HOA and shared only with the Travis County Sheriff's Department for investigations related to criminal activity.

- **Admin Restrictions**: The HOA has designated a single admin to manage the system, but this admin is restricted from running queries on the data. Their role is limited to maintaining the system and facilitating data access for law enforcement.

- **Resident Opt-Out**: The HOA has chosen to allow residents to opt-out by registering their license plates, ensuring that the system will not store their vehicle data. Detailed instructions on opting out are provided below.

- **Secure Data Storage:** All data is securely stored in compliance with the Criminal Justice Information Services (CJIS) Security Policy, which sets the highest standards for law enforcement data security.

This system is being implemented on a trial basis. We will closely monitor its effectiveness and gather feedback from the community. We believe this initiative has the potential to enhance our neighborhood's safety while respecting the privacy of our residents.

---

## Resident Opt-Out

Residents who wish to opt out of the system can follow these simple steps:

1. Navigate to https://clientportal.vigilantsolutions.com/ShieldedList/Login.aspx.
2. Enter the Site Name: West Cypress Hills HOA.
3. Enter the Password: Cypress71HillsWest
4. Provide your Name, Email, Address, and License Plate Number.
5. Select your Expunge setting. Select **Yes** to remove all existing records for the provided license plate. Select **No** to only remove future captures of the designated license plate.
6. Use the drop down menu to select the amount of time to elapse - Select Immediately

Following these instructions ensures that your license plate and all associated records captured from the installed HOA LPR readers are immediately expunged from the system, and no future data will be stored.

---

## Frequently Asked Questions

**Who owns the data collected by the LPR system?**

The West Cypress Hills HOA owns the data. It is managed within the HOA's account and shared with the Travis County Sheriff's Department only for investigations related to criminal activity.

**Who manages the system?**

A single, designated HOA admin manages the system. This admin is restricted from running any queries on the data. Their role is limited to maintaining the system and facilitating secure data access for law enforcement when required.

**How is my data protected?**

The system complies with the Criminal Justice Information Services (CJIS) Security Policy, ensuring the highest standards of data protection:

- **Encryption:** All data is encrypted during transfer and storage, preventing unauthorized access.

- **Access Control:** Only the Travis County Sheriff's Department can access the detection data.

- **Secure Cloud Storage:** Data is stored on the Microsoft Azure Government Cloud, certified for CJIS compliance

**Can unauthorized individuals access the data?**

No. Data is accessible by authorized personnel at the Travis County Sheriff's Department.

**Do LPRs help lower crime?**

West Cypress Hills has a single entrance/exit, and many crimes in our community occur overnight by vehicles entering from Highway 71. While no system can guarantee a crime reduction, LPRs act as a deterrent and assist law enforcement in identifying suspects when a crime occurs.

**How long will the data be retained?**

Data is stored for one year. After this period, it is automatically deleted unless it is part of an ongoing investigation.

**Why use cameras instead of a neighborhood watch or security patrols?**

- Neighborhood Watch: A Neighborhood Watch is a program organized by residents, not the HOA Board. They typically do not cover 24-hour periods, 7 days a week, whereas the cameras function 24/7. The board supports the idea of a Neighborhood Watch, but today no program currently exists. A resident-led Neighborhood Watch program can operate in addition to the LRP readers being installed by the HOA.
- Security Patrols: These are costly and often ineffective since crimes can occur outside the patrol's location. LPRs provide continuous, automated monitoring at a lower cost.

**Why wasn't there a neighborhood vote on this?**

Community decisions are made by our elected resident board members, who voted unanimously in support of this program after discussing it during the October 4th community meeting.

**Where is the data stored?**

The data is securely stored in the Microsoft Azure Government Cloud, which is CJIS-certified.

**What are hotlists, and how are they used?**

Hotlists are lists of vehicles of interest, such as stolen vehicles or those associated with criminal activity or missing persons. These lists are maintained by the Texas Crime Information Center (TCIC) and are available to law enforcement statewide.

**Can LPR data be used to see if my vehicle registration is expired?**

No. The TCIC hotlist does not include information about vehicle registration. To check a vehicle's registration, a law enforcement officer must access a separate system and verify the registration status.

**Are the LPR cameras used for speed enforcement?**

No. These cameras are not set up to capture speed.

**Will there be signage?**

The HOA is considering adding signage to inform residents and visitors about the presence of the cameras to enhance transparency.

**Is this system compliant with state and federal laws?**

Yes. The system complies with the FBI's CJIS Security Policy, which governs data storage and access.

# EXHIBIT

# E

The Appellees seek to minimize damages by limiting them to the initial attorney costs of $730, 13.5 hours of case work as estimated by Appellants Counsel, plus an additional 12 hours that Thomas Wolf had to take away from work, associated with this case and hearing. In comparison to the Appellant's average hourly costs, the Appellees' meager pay rate at work is $78.91/hr see **Exhibit E-1.**, which almost seems like a bargain.

Appellees seek:
- Total monetary damages of $2742.00
- Removal of all associated HOA fees ($824 unpaid to date)
- Expungement of all derogatory HOA records
- Written reprimand to the HOA Board for allowing Counsel to pursue a meritless, frivolous, and punitive case at the expense of the residents they are supposed to represent and a waste of time for the court system.
- Any Sanctions the Court deems appropriate.

# EXHIBIT

# E-1

# CIVILIAN LEAVE AND EARNINGS STATEMENT LES

VISIT THE DFAS WEB SITE AT: WWW.DFAS.MIL

| 3. Name | | 4. Pay Plan/Grade/Step | 5. Hourly/Daily Rate | 6. Basic OT Rate | 7. Basic Pay + Locality/Ma |
|---|---|---|---|---|---|
| WOLF THOMAS M | | ████ 14 07 | 78.91 | 78.91 | ████64679.00 ████0.00 |
| 8. Soc Sec No | | 9. Locality % | 10. FLSA Category | 11. SCD Leave | 12. Max Leave Carry Ove |
| ████████ | | ██ 20.35 | ██ | ██/16/0█ | ██ 240█ |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 109820052
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellees Brief with Exhibits
Status as of 1/8/2026 2:52 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Adam Pugh | | adam.pugh@caglepugh.com | 1/8/2026 1:32:01 PM | SENT |
| Marla Jones | | marla.jones@caglepugh.com | 1/8/2026 1:32:01 PM | SENT |
| Hanna Williams | | hanna.williams@caglepugh.com | 1/8/2026 1:32:01 PM | SENT |
| Jessica Loyola | | jessica.loyola@caglepugh.com | 1/8/2026 1:32:01 PM | SENT |
| Thomas Wolf | | txwolf.tx@gmail.com | 1/8/2026 1:32:01 PM | SENT |
| Thomas Wolf | | twolf.tx@gmail.com | 1/8/2026 1:32:01 PM | SENT |